UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN EATMON,<br><br>              Petitioner,<br><br>   v.<br><br>JAMES A. YATES, WARDEN,<br><br>              Respondent.                    / | No. C 09-0079 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Kevin Eatmon, a California prisoner proceeding pro se, filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent was ordered to show cause why the writ should not be granted based upon Petitioner's two claims for relief. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the Court. Petitioner has filed a traverse. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

A jury in Contra Costa Superior Court convicted Petitioner of first-degree burglary on June 15, 2006. (Ex. 1 at 2.) The Court then held a bench trial regarding Petitioner's prior convictions and, after finding all prior convictions and strike allegations to be true, sentenced him to a term of 20 years in state prison. (*Id.*) Petitioner unsuccessfully appealed the judgment of conviction, and the California Supreme Court denied his petition for review in 2007. (Ex. 3). The following description of the facts underlying Petitioner's conviction is

from the opinion of the California Court of Appeal.   (Ex. 1 at 2-9.)

Mark and Hilma Jones returned home with their three children in the evening on August 31, 2003.  Mark noticed a black BMW parked in front of the house.  One of the children noticed that the front door to the house had been broken open.  Mark entered the home and saw the latch side of the door in splinters.  One of the children heard noises from the bedroom and Mark heard vertical blinds rattle from inside the master bedroom.  He looked outside and saw a man running across the yard from the direction of the master bedroom and leap over a fence.  Mark described the man as black, athletically built, having close cut hair, and wearing a white T-shirt and dark jogging pants.  Mark ran back to the front entrance to see where the man had gone, and noticed a black man walking towards him.  Mark stated it was the same man he had just seen running across the backyard.  Mark tried to speak to the man, who appeared calm but had beads of perspiration on his face.  The man walked determinedly towards the BMW and drove off.  Mark's daughter, Sara, dialed 911 and Mark read the license plate number and gave a description of Petitioner.  When police arrived shortly thereafter, Mark found jewelry in a pillow case lying atop the bed.  A few days later, Mark identified Petitioner in a photographic line-up as the burglar.

Hilma was the last family member to enter the house.  She testified that her daughter entered the house first and went directly to call the police.  Hilma stated that her husband and son were crouched in the hallway, saying someone was in the house.  Hilma heard a scrambling sound, like a door being shaken, and her husband yelled for everybody to get out.  Hilma next saw a man run across the patio and scale a fence.  She stated the man was black, about six feet, two inches tall, of athletic build, and dressed in a white T-shirt, sweat pants and athletic shoes.  Hilma heard someone say the man appeared out front and when Hilma saw him, she was certain he was the same man who had just run across the yard.  She noticed he looked agitated.  A few days later, Hilma independently from her husband identified Petitioner as the burglar in a photographic line-up.

Officer Marcus Morales was dispatched to the Joneses' residence in response to the

burglary call. He stated the front door showed signs of forced entry. Morales noticed someone ransacked jewelry boxes inside the home. Morales received information that Petitioner was the registered owner of the black BMW that had left the scene.

Petitioner stated that on the day of the burglary, he was returning from an auto auction when he began to feel lightheaded and dizzy due to his diabetes. Petitioner usually eats something or goes jogging when this happens. He decided to go to Stanley Middle School in Lafayette for a workout. Petitioner parked around the corner due to "no parking" signs at the school, and walked back to the school where he jogged for about 15-20 minutes. When Petitioner returned to his car, Mark Jones approached him and asked what he had been doing in his yard and house. Mark kept following Petitioner and asked to look inside Petitioner's trunk. Petitioner replied repeatedly that he had not been in the house and he didn't know what Mark was talking about. Petitioner got into his car and drove off. On cross-examination, Petitioner stated he was six feet five inches tall and weighed about 210 pounds at the time of the burglary. He was dressed in jogging pants and a white T-shirt on the day of the incident.

Sergeant Daniel Nugent interviewed Petitioner following his arrest. Nugent asked why Petitioner was in Lafayette on the day of the burglary, and Petitioner stated he was jogging. Petitioner denied being in the Joneses' backyard. Petitioner stated it was a coincidence that a man who looked and dressed just like him would happen to be in the same location at the same time as him.

## ANALYSIS

### A.   Standard of Review

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1) only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001). A Petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not suffice. *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

**B.     Issues Presented**

As grounds for federal habeas relief, Petitioner asserts that: (1) there was insufficient evidence to support a finding that an occupant was present in the residence at the time of the burglary, and that such a determination should have been submitted to the jury; and (2) instructing the jury pursuant to CALCRIM Nos. 359 ("corpus delicti") and 362 ("consciousness of guilt") violated his right to due process.

        1.     Occupancy Finding

As part of the calculation of Petitioner's sentence, the trial court found that the burglary was a "violent" felony pursuant to California Penal Code Section 667.5(c).[1]  The basis for this finding was a determination, under Section 667.5(c)(21) that at the time of the burglary, the house was "occupied."  Petitioner argues first that there was insufficient evidence to support the finding that the house was occupied.  He also contends that this is a factual determination should have been decided by the jury, not the judge.

              a.     Sufficiency of evidence

Petitioner claims that there was insufficient evidence for the trial judge to find the house was occupied at the time of the burglary.  The trial judge made this finding in classifying the burglary as a "violent" felony under Section 667.5(c)(21) for purposes of calculating Petitioner's sentence.

A state prisoner alleging that the evidence in support of his state conviction or sentence cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, *see Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to habeas relief, *see id.* at 324.  In reviewing a claim of insufficient evidence, a federal tribunal does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Id.* at 318.  Rather, the relevant question is whether "any rational trier of fact could have found the essential

---

[1] All further statutory references are to the California Penal Code unless otherwise noted.

5

elements of the crime beyond a reasonable doubt." *Id.* at 324. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Id.* at 324. If confronted with a record of historical facts that support conflicting inferences, a federal habeas corpus court must defer to the presumption that the trier of fact resolved any such conflicts in favor of the prosecution. *Id.* at 326.

Contrary to Petitioner's claim, there was ample evidence to support the determination that the residence was occupied at some point during the burglary. Under Section 667.5(c)(21), "any burglary of the first degree . . . wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary" is a "violent" felony. Testimonial evidence shows that when the Joneses arrived home on the night of the incident, family members entered the residence while the burglary was still in progress. Mark Jones testified that one of his children heard noises coming from the bedroom and that he himself heard vertical blinds hanging inside a bedroom rattle right before seeing a man escape across the yard. Hilma Jones testified that she was the last family member to enter the house and that she detected a sound like a door being shaken inside the house before seeing a man run across the yard and jump the fence. Viewing the family's testimony in a light most favorable to the prosecution could reasonably lead a rational trier of fact to find beyond a reasonable doubt that Mark, his son, and Hilma were present while the burglary was still taking place. Therefore, the evidence is sufficient to support a finding that the house was occupied.

    b. <u>Right to a jury</u>

Petitioner asserts that the determination of whether the house was occupied should have been made by the jury. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. A jury therefore need not determine "sentencing factors" that merely limit the sentencing court's discretion in selecting a penalty

1 within the allowable range. *McMillan v. Pennsylvania*, 477 U.S. 79, 87-88 (1986). The
2 "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge could impose
3 based solely upon the facts reflected in the jury verdict, or admitted by the defendant; that is,
4 the relevant "statutory maximum" is not the sentence the judge could impose after finding
5 additional facts, but rather is the maximum he could impose absent additional findings.
6 *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004).

Petitioner's *Apprendi* argument fails because the occupancy finding did not result in a
more onerous penalty beyond the statutory maximum. Petitioner's sentence was not
enhanced or lengthened based upon the trial court's finding that the burglary was "violent"
under Section 667.5(c)(21). His 20-year sentence consisted of the mid-term of four years for
the burglary, which doubled to eight years because he had suffered a prior "strike" conviction
(Cal. Pen. Code §§ 667(e)(1), 1170.12(c)(1)); he received two additional enhancements of
five years each because he had two prior commercial burglary convictions (Cal. Pen. Code §
667(a)(1))[2]; and he received five one-year enhancements for having served five prior prison
terms, with three such enhancements stayed (Cal. Pen. Code § 667.5(b))[3]. *Id.* These
sentencing enhancements were all based on Petitioner's prior convictions, and fell within the
"prior conviction" exception to *Apprendi*. More importantly for the purposes of Petitioner's
claim, none of these enhancements was related to or based upon the occupancy finding or the
determination that the burglary was "violent" under Section 667.5(c)(21).

Petitioner cites the fact that the "violent" designation under Section 667.5(c)(21)

---

[2] Section 667(a)(1) applies to habitual criminals and allows for any person convicted of a serious felony who has previously been convicted of a serious felony to receive a "five-year enhancement for each such prior conviction on charges brought and tried separately."

[3] Section 667.5(b) applies when the new offense is *any* felony for which a prison sentence is imposed; it need not be a "violent" felony. *See* Cal. Pen. Code § 667.5(b) (the court "shall impose a one-year term for each prior separate prison term served for any felony").

7

1 limited the accrual of pre-sentence credits he could receive under Section 2933.1(c).[4] This
2 did not increase the length of the sentence.  Lessening the discount for good conduct credit
3 does not augment the penalty beyond the prescribed maximum punishment, but simply caps
4 the reduction within an already permissible range.  As such, Section 2933.1(c)'s provision
5 falls outside the ambit of the right to a jury trial established in *Apprendi*.  *See People v.*
6 *Garcia*, 121 Cal.App.4th 271, 276-77 (2004) (holding that there is no federal constitutional
7 right under *Apprendi* to a jury determination of facts relating to pre-sentence conduct
8 credits).  Petitioner also contends that the "violent felony" designation results in additional
9 adverse consequences, such as: limitations on the amount of post-trial goodtime/worktime
10 allowed under Sections 667.5, 1170, and 2933; being classified as a higher security inmate
11 by the California Department of Corrections and Rehabilitation; curtailment of various prison
12 privileges and programs; and social stigma (Ex. 2 at C-E).  These consequences, while
13 adverse, do not increase the maximum length of his sentence or have any bearing on the
14 statutory maximum for *Apprendi* purposes.  As a result, Petitioner did not have a right to
15 have a jury determine whether the house was occupied at the time of the burglary under
16 Section 667.5(c)(21).

17   The state appellate court correctly rejected Petitioner's claim that he was entitled to a
18 jury determination regarding whether the house was occupied at the time of the burglary, and
19 that there was insufficient evidence for the trial court to make such a finding   The California
20 Court of Appeal's decision was not contrary to, or an unreasonable application of, clearly
21 established federal law, nor did it involve an unreasonable determination of the facts in light
22 of the evidence presented.  Consequently, Petitioner is not entitled to federal habeas relief
23 based upon his first claim.

24   2. Jury Instructions

25   Petitioner also claims the trial court erred in giving jury instructions CALCRIM Nos.

---

[4] Section 2933.1(c) limits the maximum credits that may be earned against a period of confinement to "15 percent of the actual period of confinement" for individuals convicted of a violent felony listed in § 667.5(c).

1  359 and 362. Petitioner argues there was insufficient evidence to support giving these
2  instructions, and that they were defective.
3     a.   CALCRIM No. 359
4     Petitioner asserts that the instruction on "corpus delicti," CALCRIM No. 359, is
5  defective because it allows conviction based upon a standard of proof less than beyond a
6  reasonable doubt. CALCRIM No. 359 states,

> The defendant may not be convicted of any crime based on his out-of-court statements alone. Unless you conclude that other evidence shows someone committed the charged crime, you may not rely on any out-of-court statements by the defendant to convict him. The other evidence may be slight and need only be enough to support a reasonable inference that someone's criminal conduct caused an injury, loss, or harm. The other evidence does not have to prove beyond a reasonable doubt that the charged crime actually was committed. The identity of the person who committed the crime may be proved by the defendant's statements alone. You may not convict the defendant unless the people have proved his guilt beyond a reasonable doubt.

Petitioner claims the instruction permits the jury to convict him based upon a lowered standard of proof because it says that the "other evidence does not have to prove beyond a reasonable doubt that the charged crime was actually committed"; and that "the identity of the person who committed the crime may be proved by the defendants statements alone." (Ex. 2 at H.) Petitioner takes only selected portions of the instruction out of context. The last sentence explicitly admonishes the jury that the prosecution has to prove defendant's guilt beyond a reasonable doubt. When read as a whole, it is clear that the instruction does not lower the prosecution's standard of proof; to the contrary, it clearly reiterates that the "beyond a reasonable doubt" standard applies.

There were additional jury instructions informing the jury as to the correct standard of proof. A challenged jury instruction also cannot be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. 62, 71 (1991). The trial court instructed the jury with CALCRIM Nos. 103 and 220, which define reasonable doubt, reiterate that the jury can only convict if the People proved each element of the charged crimes beyond a reasonable doubt, and instruct

the jury that, in determining whether the People have proved their case beyond a reasonable doubt, the jury "must impartially compare and consider all the evidence that was received throughout the entire trial." These instructions made it perfectly clear to the jury that the reasonable doubt standard applied, and the corpus delicti instruction did nothing to confuse the jury on this point.

Petitioner also complains because the instruction does not state that it pertains only to cases involving actual confessions or admissions. (Ex. 2 at I.) Even this were true, it would only be a problem if Petitioner made no confession or admissions, but there was evidence that Petitioner did in fact make several admissions. An admission is any extrajudicial statement by the defendant, whether inculpatory or exculpatory, which tends to prove his guilt when considered with the rest of the evidence. *People v. Mendoza*, 192 Cal. App. 3d 667, 676 (1987). Petitioner told Detective Nugent that he was only jogging in Lafayette the day of the burglary, and that he was not in the Jones family's backyard. Petitioner further stated that it was purely coincidental that he happened to appear in the same location as a man who, matching his physical description and wearing similar clothing, had just scaled the Joneses' backyard fence into the street. Even though Petitioner offered these statements for exculpatory reasons, they are nevertheless "admissions" that could be used to show Petitioner's guilt when they are viewed in the context in which they were made. Therefore, Petitioner errs in contending the case did not warrant the corpus delicti instruction because there were no confessions or admissions.

For these reasons, Petitioner's arguments that CALCRIM No. 359 was defective and violated his right to due process are without merit, and habeas relief is not warranted on this claim.

### b. CALCRIM No. 362

Petitioner claims there was insufficient evidence to support giving an instruction on consciousness of guilt pursuant to CALCRIM No. 362. CALCRIM No. 362 reads:

> If the defendant made a false or misleading statement relating to the charged crime, knowing the statement was false or intending

10

> to mislead, that conduct may show he was aware of his guilt of the crime and you may consider it in determining his guilt. If you conclude that the defendant made the statement, it is up to you to decide its meaning and importance. However, evidence that the defendant made such a statement cannot prove guilt by itself.

Contrary to Petitioner's assertion, this instruction was warranted because there was sufficient evidence exists to demonstrate that Petitioner fabricated a story to explain his conduct. Petitioner told Detective Nugent that he had only been jogging in the area and that it was only a coincidence that he was outside the Joneses' home minutes after a burglar matching his description had run out of the household and scaled the backyard fence. The Jones family's testimony highlights the highly unlikely coincidental nature of Petitioner's presence. Their family's testimony is enough to allow a jury to reasonably conclude that Petitioner prefabricated a story to explain his conduct.

Petitioner also contends that by giving the instruction the trial court implied that he had made up a story and that the jury should therefore find him guilty. (Ex. 2 at K). Contrary to Petitioner's claim, consciousness of guilt is not an inherent conclusion to be drawn from the instruction. The instruction explicitly predicates the first two sentences, relating to whether a defendant made a false or misleading statement in the first instance, with "If," and leaves the ultimate resolution of the significance of such statements to the jury. The final sentence also cautions that such statements alone cannot establish culpability. Therefore, that Petitioner's statements were willfully false or misleading is not an inherent inference of the instruction itself, and CALCRIM 362 is not constitutionally infirm. *See Perkins*, 937 F.2d at 1401-02 & n.2 (upholding a similar instruction because it did not state that false exculpatory statements constitute evidence of guilt, but merely that the jury may consider them as indicating a consciousness of guilt).

The state court's denial of Petitioner's jury instruction claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, Petitioner is not entitled to habeas relief on this claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

Rule 11(a) of the Rules governing Section 2254 cases now requires a district court to rule on whether a Petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgement and close the file.

IT IS SO ORDERED.

DATED: March 29, 2011

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

KEVIN EATMON,

        Plaintiff,

  v.

JAMES A. YATES et al,

        Defendant.

Case Number: CV09-00079 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 29, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Kevin Eatmon
F36283
P.O. Box 8503
Coalinga, CA 93210

Dated: March 29, 2011

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk